WESTERN DIST.
*October,* 1831.

DRANGUET
ET ALS.
*vs.*
PRUDHOMME.

## DRANGUET ET ALS. *vs.* PRUDHOMME.

### ON AN APPLICATION FOR A REHEARING.

The rules of evidence in this state are not drawn from Spanish jurisprudence. Where a married woman avers she was not authorised by the parish judge, or her husband, to make a contract, the burthen of proof that she was authorised, is thrown on the party claiming the benefit of the contract.

The law not merely requires proof from the party holding an affirmative, because it is impossible to prove the negative; but because it does not admit of the direct and simple proof, of which the affirmative is capable.

*Rost,* for the defendant, submitted the following points on a re-hearing.

1. The court have entirely overlooked the first legal position assumed by the defendant's counsel, viz. " That under the Spanish laws there were negatives which were to be proved by the party alleging them ; and this case was one of them."

2. The court erred in deciding that the Spanish and English law of evidence did not support that proposition ; and also in asserting that the doctrine of the Spanish law was very analagous to that of the English law on that subject.

3. The general principle of the English law of evidence on this subject is, that the party who maintains the affirmative of any proposition, must prove it. That of the Spanish law on the contrary, is, that he who alleges a negative proposition must prove it, if it is susceptible of proof. 1 *Starkie on Evidence, page* 376.

4. The plaintiff could have proved by the parish judges, whether or not she had been duly authorised to contract in this case.

*Porter, J.* delivered the opinion of the court.

The court did not overlook in coming to a conclusion in

WESTERN DIST.
October, 1831.
───────────
DRANGUET
ET ALS.
vs.
PRUDHOMME.
this cause, but on the contrary maturely considered the point to which counsel has called our attention by a petition for a re-hearing; but the court did not specially notice it in the opinion delivered, because on the view then taken by us, and still retained, the rights of the parties depended on the general question which the argument had raised. As the matter is of some importance, we deviate from the usual rule, and have considered it proper to show why in our judgment, the proposition of the appellant, restricted as it now is, is yet untenable. That proposition we understand to be, that the wife had it in her power to prove she was not authorised by the parish judge, and that as she did not give that proof, her case is not made out.

It is necessary to recur again to the pleadings. The wife alleges that she never was authorised by her husband, or by any competent authority. The defendant pleads that she was authorised by the parish judge; and that her husband also specially permitted her to contract, and subsequently ratified the act. This is the issue joined. Now as it is admitted, the want of authority from the husband could not be proved; it was the duty of the purchaser to show that she did possess the right to contract, as he alleged in his answer. Proof administered by her that the parish judge had not authorised her, would in no manner have diminished the obligation of the defendant to prove the affirmative, or have rendered it more difficult. The necessity of showing the want of authority from the husband would still have remained. The burthen of proof was thrown on the defendant by the pleadings, which created an issue on a negative which, confessedly and most certainly, it was utterly impossible for the plaintiff to prove. These remarks are made on the hypothesis, that it was the duty of the wife to show she was not authorised by the parish judge. We will state hereafter, why in our opinion no such obligation was imposed on her.

The necessity of doing so is derived by the appellant, in a great degree, from a declaration made by her in the act of sale that the parish judge had given her authority to contract. To this declaration, in our judgment an importance has been

WESTERN DIST.
October, 1831.

DRANGUET
ET ALS.
vs.
PRUDHOMME.

attached, which it by no means merits. If by assertions like these, obtained from married women whom the law considers in a state of pupilage, their contracts become more binding on them, or relief more difficult, their situation would be helpless, and the protection which our legislation intended to afford an illusion. Strange and defective indeed would be the law which should provide, that the wife was incapable of contracting, and at the same time permit her to increase the difficulty of being relieved by her own declarations made at the time she entered into the contract. Is it not clear that her weakness is as much to be distrusted in making that declaration, as in making the bargain? And can it for one moment be doubted, that the same artifice which could practise on her mind so as to make her believe she was enrich-ing herself by a contract, which ruined her, would not be able to induce her to make declarations that would suit the purposes of the cunning that had ensnared her? Were then the declaration made by her in this contract such as the appel-lant contends it is, but which it will be seen by and by it is not, we are clear that it in no manner imposes on her any greater necessity of proving she was not authorised to contract, than if that declaration did not exist in the instrument.

· With these remarks we proceed to examine the case on the authorities relied on. The counsel for the appellant has referred us particularly to *Febrero,* and has endeavored to show, and for the moment it may be admitted has shown, that the doctrine found in that writer does not sustain the opinion delivered.

The law and jurisprudence of Spain have now no force in Louisiana as authority. An act of the legislature has repealed the former, and the latter rests on claims to adoption solely on its truth and conformity to reason. These laws were, however, in force at the time this contract was passed; but that portion of Spanish jurisprudence which relates to evidence has not been understood to be the rule which govern the introduction of evidence in our courts. It was early found impossible to apply it to *viva voce* examination in open

WESTERN DIST.
October, 1831.

DRANGUET
ET ALS.
vs.
PRUDHOMME.

The rules of evidence in this State are not drawn from Spanish jurisprudence. Where a married woman avers she was not authorised by the Parish Judge, or her husband, to make a contract, the burthen of proof that she was authorised, is thrown on the party claiming the benefit of the contract.

court, or to cases where both parties attended at taking depositions. Its proof and half proof, its various and minute exceptions, render it impracticable in practice, when taken in reference to the few general rules which the legislature had provided. By common, almost by universal consent, a resort to it was abandoned, and reference had to the rule of evidence as found in the English law. So far back as the year 1819, in the case of the *Planters' Bank* vs. *George*, 6 *Martin*, 670, the court declared this doctrine in very express terms, and our legislature has more than once since passed laws, which show they were not made on the supposition the jurisprudence of Spain was in force in relation to evidence. We presume the parties and the court below, acted on this general understanding in conducting the case, and introducing their proof below, and we do not think they erred.

According to the rules of evidence then which we have been in the habit of resorting to for information, the burthen of proof in this case is thrown on the defendant. We have been referred to *Starkie*, who states that minority must be proved by the minor who alleges it, and that if the adversary replies, a promise after the defendant had attained his age, it is sufficient to prove the promise, and the defendant must still prove his minority. This is on the doctrine that the *onus probandi* lies on the party who seeks to support his case by a particular fact of which he is supposed to know most; and it is an affirmative proposition on the part of the minor. But if no authority was given as in this case is alleged, can the one party be presumed to be more cognizant of what never existed than the other. And if that authority were given as the defendant alleges, it is as much within his knowledge as the plaintiff's, and as he has averred it, and it is an affirmative fact, he should prove it. The law not merely requires proof from the party who has the affirmative, on the ground that it is impossible the negative should be proved; but because it does not admit in the language of *Starkie*, of the "simple and direct proof of which the affirmative is capable," "*Ei incumbit probatee qui dicit, non qui negat*," is the rule of the civil law.

The defendant affirmed the fact in this case. The plaintiff denied it. The former, therefore, should have commenced the proof. 1 *Starkie*, 376.

But the plaintiff did more than the law required her to do; she produced the authority she had received from the parish judge, and that authority did not authorise her to make the contract; for it was general, and she was deprived of the assistance and advice of the parish judge, whether the particular contract was a prudent and proper one. This the law imperatively exacts, to make an agreement binding on a married woman. Counsel have argued, it does not follow she might not have had a special authority. Perhaps it does not necessarily follow: and this is another reason why, if there were one, he should at once have produced it. But though in another case the presumption might not have been very strong, in this case it becomes almost irresistible when taken with the declaration in the deed of sale. That declaration was, that she was "duly authorised by the parish judge." To do what? To make this purchase? No. But that "she was duly authorised to contract." The authority produced is that she be authorised "to make contracts." Coupling these two together, not a doubt remains on our minds, that it was under this authority the agreement was made and passed. If a special power existed at the time, the defendant should not have taken the declaration of a general one; and the terms of the contract creating a natural presumption of a want of proper authority is still a further reason why he should have shown a special authorisation, if any such existed.

We have, in coming to this conclusion, left out of view, the presumptions which the wife has relied on, growing out of the facts in the case, that the contract was in reality one by which she became indirectly responsible for a debt the husband owed the vendor. We have considered it as a *bona fide* contract, and believing that it was not entered into by the wife with proper authority, we think the former judgment of the court correct; and the re-hearing is refused.